UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SYBIL THOMAS, :
Plaintiff, :
:
v. : No. 3:14CV714 (DJS)
:
CONNECTICUT DEPARTMENT :
OF CORRECTION and :
LEO ARNONE, :
Defendants. :

MEMORANDUM OF DECISION

In her Amended Complaint, the plaintiff, Sybil Thomas ("Thomas"), alleges race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Count One and Count Two) as to the defendant Connecticut Department of Correction ("DOC"), and race discrimination in violation of 42 U.S.C. §§ 1981 and 1983 (Count Three) as to the defendant DOC Commissioner Leo Arnone ("Arnone"). The defendants have moved to dismiss in its entirety the plaintiff's Amended Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the defendants' motion to dismiss is granted with prejudice as to Counts One and Two of the Amended Complaint and granted without prejudice as to Count Three of the Amended Complaint.

FACTS[1]

On or about September 10, 2010, Thomas became employed by the DOC as a Correctional Industries Supervisor I, Clothing. She was assigned to work at the Osborn Correctional Institution in Somers, Connecticut ("Osborn"), and her job duties included

[1]The facts are drawn from the well-pleaded allegations contained in the Amended Complaint. (Doc. # 23).

supervising two individuals who worked within the DOC industries, training inmates how to manufacture clothing, and assisting with packaging and quality checking of production.

Thomas is an African-American female. The two individuals Thomas supervised were both Caucasians. Thomas was informed by her immediate supervisor and by her general manager that the two Caucasian males she supervised did not like the idea of having a black female as their supervisor. In her supervisory position Thomas began to discover numerous errors in the work that she checked. She would prepare reports regarding these errors and report the errors to her supervisor. On one occasion Thomas overheard one of the two individuals she supervised tell another DOC employee that he knew people and could get Thomas fired. On another occasion Thomas overheard this same individual tell a DOC employee that Thomas must be a "welfare to work person." (Doc. # 23, at 5, ¶ 15 (f)).

During her training period Thomas was subjected to differential treatment. This treatment included not being on the list with all others "cadets" being trained, being the only cadet whose name was not called at roll calls, not being debriefed along with every other cadet (or being the last person debriefed) at the end of each shift as to what task she performed that day, being referred to only by her last name instead of "Cadet" Thomas as all other trainees were referred to, not receiving all the training given to other cadets, not being given or trained in the use of a radio, and not being given a body alarm.

After she completed her training, Thomas was assigned a body alarm like all other employees at that DOC facility. Each body alarm had a number attached to it and the device assigned to Thomas was designated as "BA69." Because of the sexual connotation of the number 69, Thomas was the constant target of sexual comments and behavior by inmates and staff.

Thomas complained to the Warden about the body alarm number and noted that she was supervising over 178 male inmates, some of whom were sex offenders. The Warden informed her that nothing could be done about the body alarm unless Thomas wrote an incident report about it. Thomas began to cover the number on the body alarm with a piece of paper so that inmates would not be able to see the number. One DOC employee told Thomas that "BA69" had been newly purchased for her. Another DOC employee told Thomas that a retired doctor had worn that body alarm for some 30 years.

By way of a letter dated January 28, 2011, Thomas was informed that her DOC employment was being terminated. The letter indicated that Thomas was being terminated because of an unsatisfactory performance evaluation and failure to follow departmental rules. Thomas' general manager informed her that he had rated her work as satisfactory, but she received an unsatisfactory performance review. The general manager further stated to Thomas that he did not agree with the unsatisfactory portions of the evaluation but was forced to sign it. There were multiple versions of Thomas' performance evaluation, each one with changes in the wording and reasons for finding her performance unsatisfactory.

Thomas was also informed that she had violated Departmental Directive 2.17 "Undue Familiarity" because of her contact with her son. Thomas noted in her DOC employment application that her son had been incarcerated in a DOC facility and that she was willing to provide a further explanation of this circumstance. Thomas' son, who has not lived with her since 1997, was not incarcerated at any time during her employment by DOC. During the period of her employment by DOC Thomas did communicate with her son. On January 14, 2011, Thomas was asked by someone at Osborn about the connection with her son. Thomas had made it known

during her orientation that her son was on parole.

PROCEDURAL HISTORY

After her termination, Thomas filed a discrimination complaint against the DOC with the Connecticut Commission on Human Rights and Opportunities and the federal Equal Employment Opportunities Commission ("EEOC"). The EEOC subsequently issued Thomas a right-to-sue letter dated July 30, 2013.

On November 11, 2013, an amended complaint was filed in a different case within this District, *Igidi v. Department of Correction*, No. 3:13cv1338 (RNC), adding additional plaintiffs, including the plaintiff in this action, Sybil Thomas. As to Thomas, the amended complaint in *Igidi* raised Title VII claims against the DOC and §§ 1981 and 1983 claims against Arnone. On April 24, 2014, Judge Chatigny severed and dismissed without prejudice to refiling in separate actions the claims of the additional plaintiffs, including those of Thomas, concluding that the claims of the additional parties were not properly joined under Fed. R. Civ. P. 20. *Igidi*, No. 13cv1338, Doc. # 29.

On May 16, 2014, Thomas filed her initial complaint in this action. On December 4, 2014, she filed her Amended Complaint, which is the operative complaint for purposes of the pending motion to dismiss.

STANDARD

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it. To survive a Rule 12(b)(6) motion to dismiss, the complaint must plead enough facts to state a claim to relief that is plausible on its face." *Burns v. City of Utica*, 590 F. App'x 44, 47 (2d Cir. 2014) (citations

and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

DISCUSSION

I. TITLE VII (COUNTS ONE AND TWO)

The defendants argue that the Court lacks jurisdiction over the plaintiff's Title VII claims contained in Counts One and Two of the Amended Complaint because Thomas failed to bring suit within 90 days of receiving a right-to-sue letter from the EEOC. Although Thomas filed a memorandum in opposition to the motion to dismiss, she did not respond to this argument in her memorandum. In their reply memorandum in support of the motion to dismiss, the defendants argue further that Thomas has abandoned her Title VII claims by virtue of her failure to respond to their Title VII arguments.

"When a plaintiff's specific claim is attacked in a motion to dismiss, a plaintiff must rebut the defendant's argument against that claim or it shall be deemed abandoned." *Massaro v. Allingtown Fire District*, No. 3:03-CV-00136 (EBB), 2006 WL 1668008, at *5 (D. Conn. June 16, 2006). The defendants' memorandum in support of their motion to dismiss included a specific, detailed attack on the plaintiff's Title VII claims. (Doc. # 27-1, at 5-8). Because the plaintiff failed to rebut, or address in any way, the defendants' argument against those claims, the Court deems those claims (Counts One and Two) abandoned.

Even if the plaintiff had not abandoned her Title VII claims, it is apparent that those claims would be subject to dismissal for the reason specified in the motion to dismiss, i.e., those claims were not filed within the time required by Title VII. "'In order to be timely, a claim under

Title VII . . . must be filed within 90 days of the claimant's receipt of a right-to-sue letter.' *Sherlock v. Montefiore Medical Center*, 84 F.3d 522, 525 (2d Cir. 1996); 42 U.S.C. § 2000e-5(f)(1)." *Nolley v. Swiss Reinsurance America Corp.*, 857 F. Supp. 2d 441, 454 (S.D.N.Y. 2012).

The EEOC issued Thomas a right-to-sue letter dated July 30, 2013.[2] "Typically, there is an assumption that a right-to-sue letter arrives three days after its mailing. Additionally, it is typically presumed that a government agency has mailed a notice on the date shown on the notice." *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 371 (S.D.N.Y. 2006) (citation omitted). The presumption, which the plaintiff has made no effort to rebut, is that Thomas received her right-to-sue letter on August 2, 2013. Ninety days after August 2, 2013, was October 31, 2013. The amended complaint in *Igidi*, which added Thomas' Title VII claims[3], was filed on November 11, 2013, which is more than 90 days after Thomas' receipt of her right-to-sue letter. "[Thomas'] Title VII claims are therefore untimely and must be dismissed." *Nolley*, 857 F. Supp. 2d at 454.

II. §§ 1981 AND 1983 (COUNT THREE)

a. Statute of Limitations

Section 1981 provides in part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). "'[T]he express cause of action for

---

[2]As noted by the defendants, the Court may consider the EEOC right-to-sue letter in connection with the motion to dismiss because it is incorporated into the complaint by reference. *See Briggs v. New York State DOT*, 233 F. Supp. 2d 367, 372 n.1 (N.D.N.Y. 2002).

[3]The defendants argue that Thomas never asserted a Title VII claim in *Igidi*, because the Title VII claims in that action pertained only to paragraphs 7-46 and 182-204 of the amended complaint. The Court notes that paragraphs 19 through 46 of the amended complaint in *Igidi* related specifically to Thomas. *See Igidi*, No. 13cv1338, Doc. # 8, at 4-10, ¶¶ 19-46.

damages created by § 1983 constitutes the *exclusive* federal remedy for violation of the rights guaranteed in § 1981 by state governmental units . . . .'" *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989)).

The defendants contend that Count Three of the Amended Complaint must be dismissed because Thomas' §1981 and §1983 claims are subject to the three year statute of limitations applicable to §1983 and were not filed within three years of the termination of her DOC employment. According to the defendants, "[s]ince Section 1983 affords the exclusive federal remedy for violation of the rights guaranteed in §1981 by state governmental units, claims for violation of Section 1981 brought pursuant to Section 1983 are subject to the limitations period applicable to Section 1983." (Doc. # 27-1, at 15). A three year statute of limitations applies to §1983 claims in Connecticut. *See Lounsbury v. Jeffries*, 25 F.3d 131, 132-33 (2d Cir. 1994).

Thomas argues in response that her §1981 and §1983 claims are subject to a four year statute of limitations and were timely filed. She contends that the decision of the Supreme Court in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004) makes it clear that a catchall statute of limitations of four years applies "if the plaintiff's claim against the defendant was made possible by a post-1990 enactment"; *id.* at 382; and that her claims were made possible by a 1991 amendment to §1981. Thomas acknowledges, however, that *Jones* involved a claim against a private party and that her claims against state actors are brought through the remedial provisions of §1983.

This same issue was addressed by Judge Arterton in *Gilbert v. Department of Correction*, Civil No. 3:10cv1877 (JBA), 2014 U.S. Dist. LEXIS 161476 (D. Conn. Nov. 18, 2014), which

also involved a claim that a DOC employee's termination was motived by racial discrimination. "In 1991, Congress added two subsections to §1981. Section 1981(b) now defines contractual formation and enforcement, protected by subsection (a), to include 'the making, performance, modification, and termination of contracts . . . .'" *Id.* at *12 (internal quotation marks and citation omitted). Because Gilbert's claim relating to his termination alleged discrimination occurring after the formation of the contract, "[u]nder *Jones* it should . . . be governed by a four-year statute of limitations." *Id.*

Judge Arterton then proceeded to address the "additional consideration . . . not present in *Jones* . . . [that] Plaintiff's claims are against state actors and are thus brought via §1983." *Id.* at *12-13. "The Second Circuit has not addressed this question[4], but . . . [t]he Court is persuaded by the Eleventh Circuit's holding [in *Baker v. Birmingham Board of Education*, 531 F.3d 1336 (11th Cir. 2008)] that *Jones* compels the conclusion that a §1981 claim that is 'made possible by' a post-1990 Act of Congress 'arises under' that Act and not under §1983 for purposes of §1658(a)[5] because '[w]ere it not for the 1991 Act, [the plaintiff's] complaint would fail to state a claim under §1983.'" *Id.* at *13 (quoting *Baker*, 531 F.3d at 1338). This Court agrees with Judge Arterton that "the applicable statute of limitations here is four years." *Id.* at *14. *See also Ortiz v.*

---

[4]Judge Arterton recognized that in *Patterson v. County of Oneida*, 375 F.3d 206 (2d Cir. 2004), "decided two and a half months after *Jones*, the Second Circuit applied a three-year statute of limitations to a claim under §1981 brought pursuant to §1983. However, the court's lack of discussion of or citation to *Jones* indicates that *Jones* was not under consideration as a basis for its decision." *Gilbert*, 2014 U.S. Dist. LEXIS 161476, at *13-14 n.4. The Court also notes that the cases cited by the Second Circuit in *Patterson* with reference to the three year statute of limitations pre-date the Supreme Court's decision in *Jones*. *See Patterson*, 375 F.3d at 225.

[5]"Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. §1658(a).

*City of New York*, 755 F. Supp. 2d 399, 407 (E.D.N.Y. 2010) ("I agree with the Eleventh Circuit that the four-year catch-all statute of limitation applies to a §1983 action claiming a violation of rights that are protected by a post-1990 enactment.").

Thomas was terminated on January 28, 2011. She filed this action on May 16, 2014, which was well within the applicable four-year statute of limitations. The Court concludes that Thomas' §1981 and §1983 claims are timely and thus not barred by the statute of limitations.

b. Official Capacity

Thomas' §§ 1981 and 1983 race discrimination claims are brought against the defendant Arnone in both his official and individual capacities. The defendants have moved to dismiss these claims in their entirety. The Court will address the official and individual capacity claims separately.

The plaintiff's Amended Complaint seeks compensatory damages and "[s]uch further and equitable relief as the Court may deem appropriate." (Doc. # 23, at 10, ¶ 42). The defendants maintain that a claim for money damages against Arnone in his official capacity is barred by the Eleventh Amendment. With respect to equitable relief, the defendants argue that the Amended Complaint does not request specific prospective injunctive relief, and that Arnone lacks the authority to implement any injunctive relief, since he is no longer the DOC Commissioner.

As was the case with regard to the defendants' Title VII arguments, the plaintiff has failed to respond to the defendants' arguments concerning her official capacity claims against Arnone. The Court deems those claims abandoned. In any event, the Eleventh Amendment clearly bars any money damages claim against Arnone in his official capacity. *See Clark v. DiNapoli*, 510 F.

App'x 49, 51 (2d Cir. 2013) ("The district court properly dismissed [the plaintiff's] claims against the State Defendants for money damages as precluded by the Eleventh Amendment"). With regard to any claim for equitable relief, "defendant Arnone is no longer the Commissioner of the Department of Correction, such that any claim against him for prospective or injunctive relief would be moot." *Moore v. Connecticut Department of Correction*, No. 3:14-cv-01002 (JAM), 2015 U.S. Dist. LEXIS 22058, at *5 (D. Conn. Feb. 24, 2015). Additionally, a complaint seeking "[s]uch further and equitable relief as the Court may deem appropriate" does not properly invoke the *Ex Parte Young* exception to Eleventh Amendment immunity. *Id.*

c. Individual Capacity

With regard to Thomas' §§ 1981 and 1983 race discrimination claims against Arnone in his individual capacity, the defendants contend that the plaintiff has failed to adequately allege personal involvement by Arnone as is necessary to state a claim for individual liability under those sections. "Liability under both section 1981 and section 1983 . . . requires a showing of personal involvement by the defendant. The doctrine of respondent superior does not apply to section 1983 actions." *Baker v. Connecticut Department of Correction*, Civil Action No. 3:03cv1894 (JCH), 2006 U.S. Dist. LEXIS 10036, at *33 (D. Conn. March 8, 2006) (citation omitted). Consistent with *Iqbal*, a plaintiff must plead factual content sufficient to allow the Court to draw the reasonable inference that the defendant was personally involved in the violations alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Second Circuit recently addressed personal involvement and the *Iqbal* plausibility

standard in the context of claims[6] brought against, among other defendants, the former United States Attorney General John Ashcroft, the former Director of the Federal Bureau of Investigation Robert Mueller, and the former Commissioner of the Immigration and Naturalization Service James Ziglar (referred to collectively as the "DOJ defendants"). These claims were brought by individuals who were detained in the aftermath of the 9/11 terrorist attacks and allege discriminatory and punitive treatment the plaintiffs suffered while confined. *Turkmen v. Hasty*, Nos. 13-981, 13-999, 13-1002, 13-1003, 13-1662, 2015 U.S. App. LEXIS 10160 (2d Cir. June 17, 2015). The Second Circuit noted that "Plaintiffs must plausibly plead that each Defendant, 'through the official's own individual actions,' violated Plaintiffs' . . . rights." *Id.* at *29 (quoting *Iqbal*, 556 U.S. at 676). The DOJ defendants argued that "the former Attorney General and FBI Director did not themselves require or specify any of the particular conditions set forth in the complaint" and that those defendants could not be held liable on a respondeat superior theory. *Id.* at 42 (internal quotation marks omitted). The Second Circuit found, however, that the plaintiffs' complaint included specific factual allegations that the DOJ defendants were aware of the punitive conditions under which the plaintiffs were being confined, also knew that there was no suspicion that the plaintiffs were connected to terrorist activities, and that the DOJ defendants nonetheless were responsible for then taking an action which ensured that the plaintiffs would continue to be confined in punitive conditions. *Id.* at 44. These factual

[6] Most of the claims against the DOJ defendants were brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* claims, which are brought against federal officials, are the "federal analog to suits brought against state officials under 42 U.S.C. § 1983." *Iqbal*, 556 U.S. at 675 (internal quotation marks omitted). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual action, has violated the Constitution." *Id.* at 676.

allegations, according to the Second Circuit, sufficiently plead the personal involvement of the DOJ defendants to survive the defendants' motion to dismiss. *Id.*

In contrast to the specific factual allegations in *Turkmen* that the Second Circuit found sufficient to plausibly allege personal involvement by the DOJ defendants, Thomas' Amended Complaint does not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," i.e., personal involvement by Arnone in the misconduct alleged by Thomas. *Iqbal*, 556 U.S. at 678. Thomas alleges that Arnone, as the DOC Commissioner, "is a policy maker for the Department." (Doc. # 23, at 8, Count Three, ¶ 35). She goes on to allege that since 2000 the defendants have engaged in racial discrimination by maintaining the following practices, customs, and policies:

> [E]ngaging in unwarranted and baseless investigations of its African-American employees while not engaging in such investigations of its Caucasian employees. . . .
>
> [P]ermitting white employees to engage in conduct that violates Department rules and regulations without discipline while disciplining non-white employees. . . .
>
> [R]etaliating against non-white employees who engage in protected activity while not retaliating against white employees. . . .
>
> [I]mposing more harsh discipline to non-white employees than it imposes upon white employees who engage in the same or similar conduct.
>
> Engaging in immediate and serious investigations of complaints made by white employees while simultaneously refusing to investigate complaints made by non-white employees against white employees. . . .
>
> [P]roviding fewer training opportunities for non-white employees than it provides for white employees.

(Doc. # 23, at 9, Count Three, ¶ 36).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for purposes of stating a plausible claim for relief. *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not show[n] - - that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). In terms of Arnone's personal involvement in the alleged racial discrimination against Thomas, the §§1981 and 1983 claims in the Amended Complaint are "supported by mere conclusory statements." *Id.* at 678. For that reason the Amended Complaint does not state a plausible claim for relief based on those sections and cannot survive the defendants' motion to dismiss. *Id.* at 679.

When a district court grants a motion to dismiss for failure to state a plausible claim, "the usual practice is to grant leave to amend the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). The Court will afford Thomas an opportunity to replead her §§1981 and 1983 claims against Arnone in his individual capacity. If she chooses to do so, her further amended complaint must plead factual content sufficient to satisfy the *Iqbal* plausibility standard.

CONCLUSION

For the reasons stated above, the defendants' motion to dismiss (**doc. # 27**) is **GRANTED in part and DENIED in part**. The Court dismisses with prejudice the plaintiff's Title VII claims (Count One and Count Two) and the §§1981 and 1983 claims against the defendant Arnone in his official capacity (Count Three). The Court dismisses without prejudice the plaintiff's §§1981 and 1983 claims against the defendant Arnone in his individual capacity (Count Three).

Thomas may file a further amended complaint limited to her §§1981 and 1983 claims

against the defendant Arnone in his individual capacity and consistent with this decision. Any further amended complaint shall be filed by August 17, 2015. Failure to file a further amended complaint by August 17, 2015, shall result in a dismissal with prejudice of this action in its entirety without further notice to the plaintiff.

SO ORDERED this 30th day of June, 2015.

/s/ DJS
Dominic J. Squatrito
United States District Judge